IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

SHARON R. GLADWIN,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C12-0017

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.   Gladwin's Education and Employment Background . . . . . . . . . . . . 5
      B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 6
           1.   Gladwin's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . 6
           2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . . 6
      C.   Gladwin's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 9
      B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 11
           1.   Diabetes, Neuropathic Foot Ulcers, and Fully and Fairly
                Developed Record . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           2.   Credibility Determinations . . . . . . . . . . . . . . . . . . . . . 14
                a.   Credibility Determination for Gladwin . . . . . . . . . . . 14
                b.   Credibility Determination for Third-Party Witnesses . . 18

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Sharon Rae Gladwin on January 31, 2012, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and widow's insurance benefits, and Title XVI supplemental security income ("SSI") benefits. Gladwin asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits, widow's insurance benefits, and SSI benefits. In the alternative, Gladwin requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On January 9, 2009, Gladwin applied for both disability insurance benefits and SSI benefits. In her applications Gladwin alleged an inability to work since November 1, 2007 due to bipolar disorder, leg and foot pain, diabetes, high blood pressure, and a thyroid deficiency.[1] On January 16, 2009, Gladwin's application for SSI benefits was denied due to ineligibility to receive SSI benefits. Gladwin's application for disability insurance benefits was denied on March 25, 2009. On June 27, 2009, her application for disability insurance benefits was denied on reconsideration. On August 12, 2009, Gladwin requested an administrative hearing before an Administrative Law Judge ("ALJ"). On November 9, 2009, Gladwin applied for widow's insurance benefits.[2] On August 5, 2010, Gladwin

---

[1] At the administrative hearing, Gladwin amended her disability onset date to November 25, 2007. *See* Administrative Record at 13.

[2] The Court notes that the administrative record contains no documentation regarding any determination on Gladwin's application for widow's insurance benefits, except the ALJ's decision which is currently under review. Presumably, there is no such determination because in order to be entitled to widow's insurance benefits, Gladwin must be the widow of a fully-insured individual, be at least 50 years old, but younger than 60 years old, and be disabled. *See* 20 C.F.R. § 404.335(c). Therefore, even though she meets the other requirements, Gladwin must also be found to be disabled before she is
(continued...)

appeared via video conference with her attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Gladwin and vocational expert Roger F. Marquardt testified at the hearing. Gladwin's friend, Kathleen Cowman, also testified at the hearing. In a decision dated August 26, 2010, the ALJ denied Gladwin's claims. The ALJ determined that Gladwin was not disabled and not entitled to disability insurance benefits, SSI benefits, or widow's insurance benefits because she was functionally capable of performing her past relevant work as an office helper. Gladwin appealed the ALJ's decision. On December 13, 2011, the Appeals Council denied Gladwin's request for review. Consequently, the ALJ's August 26, 2010 decision was adopted as the Commissioner's final decision.

On January 31, 2012, Gladwin filed this action for judicial review. The Commissioner filed an Answer on April 23, 2012. On May 26, 2012, Gladwin filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing her past relevant as an office helper. On July 23, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On February 27, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the

---

[2](...continued)
entitled to widow's insurance benefits.

Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of

benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Gladwin's Education and Employment Background

Gladwin was born in 1959. She is a high school graduate. At the administrative hearing, Gladwin testified that during her schooling she did not take any special education classes. She also testified that she is able to read, write, speak, and understand the English language, and perform basic math work. Additionally, Gladwin holds a certificate in executive secretarial work from a business college.

The record contains a detailed earnings report for Gladwin. The report covers the time period of 1978 to 2008. From 1978 to 1989, Gladwin earned between $3,636.94 (1989) and $10,377.59 (1987). She had no earnings in 1990 and 1991. From 1992 to 2008, she earned between $667.00 (1992) and $7,737.90 (2002). She has no earnings since 2009.

## B. Administrative Hearing Testimony

### 1. Gladwin's Testimony

At the administrative hearing, Gladwin's attorney questioned Gladwin about her mental health problems. Specifically, Gladwin's attorney inquired:

> Q:  Do you still have some problems though as far as depression and anxiety, that kind of thing?
> A:  Yes, I do.
> Q:  Can you describe symptoms that you have?
> A:  Okay. I can't concentrate very well and sometime [sic] I'll pace back and forth and I, let me think.
> Q:  Is your memory affected? It sounds like it.
> A:  Yes, my memory is affected. My kids will tell me something and then I'll forget all about it and then they'll say well we told you that, mom.

(Administrative Record at 59-60.) Gladwin's attorney also asked Gladwin whether she suffered from any pain. Gladwin responded that she suffers from pain due to her diabetes and leg problems. She rated her pain at 9 on scale of 1 to 10 with 10 being the most severe pain. For example, Gladwin testified that "if I try to go for a walk just like from the parking lot to the inside of Walmart, it's, if it's, if I have to part [sic] at all very far away, I'm in pain by the time I get to that little rider cart."[3]

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Roger F. Marquardt with a hypothetical for an individual who is:

> limited to light work . . . should never climb ropes, ladders, or scaffolds[,] however; only occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, crawl; should avoid concentrated exposure to hazards such as heavy machinery and unguarded heights and is able to do only simple routine repetitive work.

---

[3] Administrative Record at 62-63.

(Administrative Record at 70.) The vocational expert testified that under such limitations, Gladwin could perform her past work as an office helper.

Gladwin's attorney also questioned the vocational expert. Gladwin's attorney inquired whether (1) working at a slow pace for up to one-third of the workday, (2) missing up to 4 days of work each month due to impairments, and (3) needing two to three extra work breaks per day, would impact Gladwin's ability to maintain employment. The vocational expert opined that such a limitation would preclude Gladwin from competitive employment.

### C. Gladwin's Medical History

On November 25, 2007, Gladwin went to the emergency room at St. Luke's Hospital, in Cedar Rapids, Iowa. She presented at the emergency room with sleeping problems and agitation. The emergency room physicians noted that "[i]n the last couple of days [Gladwin] has been unable to sleep. She feels she cannot manage any more. . . . She has not threatened herself or others but is at her wits end on how to deal with the problem."[4] Gladwin was admitted to the hospital for "physical protection and further evaluation and treatment."[5] While hospitalized, Gladwin was treated with medication, and showed gradual improvement in her symptoms until she was discharged. At the time of her discharge, on December 4, 2007, Gladwin's diagnoses included bipolar affective disorder, manic with mixed features, probable anxiety disorder, hypothyroidism, type 2 diabetes, and urinary incontinence. As treatment, doctors recommended continued use of medication and follow-up at the Abbe Center for Community Mental Health, in Cedar Rapids.

---

[4] Administrative Record at 370.

[5] *Id.* at 362.

In January 2008, Gladwin met with Ellen Natvig, PA-C, at the Abbe Center. Gladwin met regularly with Natvig through December 2008.[6] Natvig consistently diagnosed Gladwin with bipolar disorder, and assessed GAF scores between 55 and 60. During this time period, Natvig noted that Gladwin at times felt "a little depressed," had difficulty sleeping, or had decreased energy. In December 2008, Gladwin reported that she felt she was "doing a little bit better."

In September 2008, Gladwin met with doctors at the University of Iowa Hospitals and Clinics ("UIHC") complaining of leg cramps and tremors in her left arm. Gladwin reported that her tremors occurred intermittently with spontaneous onset and resolution. In January 2009, Gladwin met with Dr. Pedro Gonzalez-Alegre regarding her tremors. Dr. Gonzalez-Alegre noted that Gladwin had 10-12 tremor episodes per day, but they did not affect her "quality of life or activities of daily living."[7] Upon examination, Dr. Gonzalez-Alegre diagnosed Gladwin with probably drug-induced Parkinsonism. Dr. Gonzalez-Alegre recommended either discontinuing the offending drug or prescribing additional medication to curb the Parkinson-type symptoms. By July 2009, medication had "significantly" helped to resolve Gladwin's resting tremors.

On March 25, 2009, Dr. John Tedesco, Ph.D., reviewed Gladwin's medical records and provided Disability Determination Service ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Gladwin. On the Psychiatric Review Technique assessment, Dr. Tedesco diagnosed Gladwin with bipolar affective disorder. Dr. Tedesco determined that Gladwin had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Tedesco determined that Gladwin was

---

[6] *Id.* at 403-418.

[7] *Id.* at 437.

moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Tedesco concluded that:

> From a mental perspective, evidence is consistent and the claim is credible in demonstrating some limitations in task completion and sustained persistence. However, these limitations are not substantial. This conclusion is based on the following observations. Since [Gladwin's] discharge from hospital treatment, her condition has been stable with GAF scores ranging between 55-60. Activities of daily living have been adequate in all respects. Mental status is within normal limits except for what appears to be some chronic depression. [Gladwin] is able to remember and carry out at least simple instructions. No other significant deficits are demonstrated.

(Administrative Record at 462.)

On April 9, 2010, Gladwin was admitted to UIHC with a diabetic foot ulcer and cellulitis. Gladwin's ulcer developed approximately ten days prior to her admittance at UIHC. At the hospital, emergency room doctors performed a debridgement, and then started her on medication. Gladwin was discharged on April 11, 2010, and doctors found "marked improvement of the left foot cellulitis."[8]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Gladwin is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir.

---

[8] Administrative Record at 526.

2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Gladwin had not engaged in substantial gainful activity since November 25, 2007. At the second step, the

ALJ concluded from the medical evidence that Gladwin had the following severe impairments: bipolar disorder, diabetes mellitus, obesity, hypothyroidism, hypertension, hyperlipidemia, drug-induced bilateral hand tremors, and degenerative joint disease of the left foot. At the third step, the ALJ found that Gladwin did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Gladwin's RFC as follows:

> [Gladwin] has the residual functional capacity to perform light work . . . except she should never climb ladders, ropes, or scaffolds; and only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. [Gladwin] should avoid concentrated exposure to hazards such as heavy machinery and unguarded heights. [Gladwin] is able to perform only simple, routine, repetitive work.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Gladwin could perform her past relevant work as an office helper. Therefore, the ALJ concluded that Gladwin was not disabled.

### B. Objections Raised By Claimant

Gladwin argues that the ALJ erred in three respects. First, Gladwin argues that the ALJ failed to properly consider her difficulties with diabetes and neuropathic foot ulcers. Second, Gladwin argues that the ALJ failed to fully and fairly develop the record, particularly with regard to the medical evidence. Lastly, Gladwin argues that the ALJ failed to properly assess her subjective allegations of pain and disability.

### 1. Diabetes, Neuropathic Foot Ulcers, and Fully and Fairly Developed Record

Gladwin argues that in determining whether she was disabled, the ALJ failed to fully and fairly develop the record. Specifically, Gladwin argues that the ALJ failed to properly consider her difficulties with diabetes and neuropathic foot ulcers when assessing her RFC and determining whether she was disabled. Gladwin also argues that the ALJ did not have enough medical evidence to determine whether she was disabled. Thus, Gladwin asserts that the ALJ should have ordered a consultative examination. Gladwin concludes

that this matter should be remanded for a consultative examination to fully and fairly develop the record on the issue of whether she is disabled.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

An ALJ also has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted). 20 C.F.R. § 416.919a(b) provides that a consultative examination may be purchased "to try to resolve an inconsistency in the evidence or when the evidence as

a whole is insufficient to support a determination or decision on your claim." *Id*. For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ thoroughly reviewed Gladwin's medical records and fully considered the opinions of treating and consultative sources.[9] In particular, the ALJ noted that:

> With respect to the impairments of diabetes mellitus . . . the medical evidence of record indicated the conditions were generally well-controlled with medication. . . . Therefore, the undersigned finds these impairments to be nonsevere in nature. Nonetheless, the undersigned has assessed the residual functional capacity below considering all the impairments, severe and nonsevere.

(Administrative Record at 16.) Similarly, the ALJ also addressed Gladwin's foot ulcer in her decision. Specifically, the ALJ found that:

> With respect to the foot ulcer for which [Gladwin] sought treatment for in April 2010, the medical records show it healed by July 2010. Her treating physician for the foot ulcer advised her to walk, even after the foot ulcer, indicating she should be active; this provides some support for the light residual functional capacity above.

> However, cellulitis in her left leg and foot developed just prior to the hearing in early August 2010, making her left lower extremity swell, turn red, and be painful to walk on. [Gladwin] was stabilized in the hospital and will be followed by her treating physicians for this condition. There is no evidence that the cellulitis will last for a period of 12 consecutive months, as her previous ulcer healed within three months. Accordingly, the undersigned finds this condition, as recent as it is, is not a basis for a more restrictive residual functional capacity than that above.

---

[9] *See* Administrative Record at 20-25.

(Administrative Record at 24-25.) The Court finds the ALJ's thorough consideration of the medical evidence as a whole, including her discussion of Gladwin's diabetes and foot ulcer, adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the Court determines that remand is unnecessary for a consultative examination. *See Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

Similarly, having reviewed the entire record, the Court finds that the ALJ properly considered Gladwin's medical records, observations of treating physicians, and Gladwin's own description of her limitations in making the RFC assessment for Gladwin.[10] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 2. *Credibility Determinations*

#### a. *Credibility Determination for Gladwin*

Gladwin argues that the ALJ failed to properly evaluate her subjective allegations of disability. Gladwin maintains that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Gladwin asserts that the ALJ erred by disregarding Gladwin's use of a wheelchair, considering Gladwin's receipt of unemployment benefits, and focusing on the fact that no treating doctors rendered any opinions regarding

---

[10] *See* Administrative Record at 16-25.

limitations for Gladwin. The Commissioner argues that the ALJ properly considered Gladwin's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express

credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds [Gladwin's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Gladwin's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible. As mentioned earlier, the record reflects work activity after the alleged onset date. Although the work activity did not constitute disqualifying substantial gainful activity, it indicates [Gladwin's] daily activities have been, at least at times, somewhat greater than generally reported. At one point or another in the record, either in forms completed in connection with the application, in medical records or in testimony, [Gladwin] reported activities of daily living including driving, shopping, attending church, traveling, and sewing handbags. The activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Despite complaints of allegedly disabling symptoms, [Gladwin] has not taken narcotic based pain relieving medication or over-the-counter pain medication. Furthermore, there is evidence that [Gladwin] was, at least at times, not compliant in taking prescribed medication.

Furthermore, [Gladwin] admitted certain abilities that provide support for part of the residual functional capacity conclusion in this decision.

Moreover, [Gladwin] received unemployment compensation after her alleged onset date. . . . When [Gladwin] applied for unemployment compensation [s]he had to assert that [s]he was able to work. Such an assertion constitutes an admission against the interests of any individual claiming the inability to work because of a medically determinable physical or mental impairment as required to qualify for Social Security benefits. Applying for unemployment compensation does not prove by itself that the applicant is not disabled. Nevertheless, it does indicate [Gladwin] considered herself ready, willing, and able to work, which is compelling and seriously undermines [Gladwin's] assertion that [s]he is incapable of working in competitive employment.

(Administrative Record at 24.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Gladwin's treatment history and medical history,[11] prior work record, daily activities, intensity of pain, functional restrictions, and use and effectiveness of medications in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Gladwin's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered,

---

[11] *See* Administrative Record at 20-25 (providing thorough examination and consideration of Gladwin's medical history).

but for good reasons explicitly discredited Gladwin's subjective complaints, the Court will not disturb the ALJ's credibility determination.[12] *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. *Credibility Determination for Third-Party Witnesses*

Gladwin argues that the ALJ improperly discredited third-party testimony and statements from non-medical sources regarding her complaints of disability. Specifically, Gladwin asserts that the ALJ improperly discredited Kathleen Cowman, Gladwin's friend who testified at the hearing, and Gladwin's pastor, Karen Downey Beals, who submitted a letter to the Social Security Administration on Gladwin's behalf. Gladwin also maintains

---

[12] In her brief, Gladwin presents several specific arguments which the Court finds have no merit with regard to the ALJ's thorough and proper credibility determination. For example, Gladwin complains that the ALJ improperly observed in her decision that "one might expect to see some indication in the treatment record of restrictions placed on claimant by a treating source." *See* Gladwin's Brief (docket number 8) at 20 (quoting Administrative Record at 25). Gladwin's complaint is misplaced for two reasons. First, the ALJ's observation was not part of her credibility determination, and second, it is not error for an ALJ to note the lack of significant restrictions from a treating physician in a credibility determination. *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (citation omitted). Similarly, the ALJ's discussion of Gladwin's receipt of unemployment compensation was not error. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) ("Finally, the Commissioner's decision to deny Johnson disability benefits is bolstered by the fact that Johnson received unemployment compensation during the time she claims to have been disabled."). Lastly, Gladwin's concern that the ALJ disregarded her use of a wheelchair is unfounded. Again, the ALJ did not discuss Gladwin's use of a wheelchair in her credibility determination. Furthermore, the ALJ only noted that while Gladwin used a wheelchair at times, she did not have a prescription for a wheelchair from a treating physician. Even assuming such a statement was error, the Court believes it would be a harmless error because the ALJ would not have decided Gladwin's credibility differently. *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently . . . and any error by the ALJ was therefore harmless.").

that the ALJ erred because she did not address a written statement from her deceased husband, written before he passed away.

When considering third-party testimony concerning a claimant's symptoms or difficulties with pain, the regulations provide that an ALJ must "'carefully consider any other information you may submit about your symptoms,' including statements 'other persons provide about your pain or other symptoms.'" *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1529(c)(3)); *see also Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008) ("[S]tatements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints of pain."). In other words, an ALJ may not ignore the statements of other parties regarding a claimant's condition. *Willcockson*, 540 F.3d at 881.

Here, the ALJ addressed the third-party testimony and statements of Cowman and Beals. With regard to Cowman, the ALJ determined that:

> Kathleen Louise Cowman, a friend of [Gladwin] for approximately 15 years, testified she saw [Gladwin] on a daily basis until about a month before the hearing. She stated she assisted [Gladwin] by dressing the foot ulcer wound and by picking up medication, buying groceries, and taking her to appointments. The witness testified that after the ulcer was cured, in June 2010 a foot specialist or orthopedist at the University of Iowa Hospitals and Clinics indicated both Achilles tendons were twisted. The witness related that the physician had indicated surgery could be performed on one tendon at a time and recovery from each surgery would take 8 to 12 weeks in bed. Prior to the foot ulcer, the witness related she helped [Gladwin] deal with emotional issues, as [Gladwin] had severe depression. Ms. Cowman testified [Gladwin] had experienced sleeping problems for several years.
>
> The testimony of the witness generally corroborated [Gladwin's] testimony. Significant weight cannot be given to the testimony of the witness, however, because it was not consistent with the preponderance of the treating notes, and observations by treating medical providers in this case.

(Administrative Record at 19-20). With regard to Beals, the ALJ found that:

> Gladwin's pastor provided a letter in support of [Gladwin]
> dated April 4, 2010, at the request of [Gladwin's]
> representative. The pastor described [Gladwin's] problems
> with walking; however, the description was not supported by
> substantial medical evidence in the record.

(Administrative Record at 21.)

It is clear from the ALJ's decision that she considered and addressed the testimony and statements of both Cowman and Beals. Furthermore the ALJ provided reasons for discounting the testimony and statements of both witnesses. By providing reasons for discrediting Cowman and Beals, the ALJ did more than is necessary according to the Eighth Circuit Court of Appeals, for evaluating the credibility of third-party witnesses. In *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992), the Eighth Circuit determined that failure to provide any reasons for discrediting a third-party witness is not error when support for discrediting such a witness is found in the same evidence used by an ALJ to find that a claimant's testimony is not credible. *See also Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995) ("[A]lthough the ALJ failed to list specific reasons for discrediting the testimony of Carol Bennett, it is evident that most of her testimony concerning Lorenzen's capabilities was discredited by the same evidence that discredits Lorenzen's own testimony concerning his limitations."); *Buckner*, 646 F.3d at 559-60 (discussing *Robinson* and *Lorenzen* and applying that reasoning to testimony from the claimant's girlfriend). Because the ALJ explicitly considered the testimony and statements of Cowman and Beals in her decision, and provided reasons for discrediting their testimony and statements, the Court concludes that the ALJ properly addressed their testimony in making her credibility determinations. Moreover, the Court finds that the reasons articulated by the ALJ for discrediting Cowman and Beals are supported by the reasons for discrediting Gladwin's own testimony regarding her limitations. *See Buckner*, 646 F.3d at 559-60; *Lorenzen*, 71 F.3d at 319.

In her brief, Gladwin also argues that the ALJ failed to consider her husband's statements that were submitted six months before his death in October 2009. Specifically, Gladwin argues that:

> Mr. Gladwin was disabled and spent most of the day with his wife. The claimant could not stand long enough to cook or do dishes. She put off laundry and dishes. He confirmed Ms. Gladwin's use of a wheelchair for distances.

Gladwin's Brief (docket number 8) at 23. In response, the Commissioner cites to *Buckner*, and argues that:

> the Eighth Circuit Court of Appeals has held that even where the ALJ did not expressly address a third-party statement in her decision and the court could not determine from the record that the ALJ considered the statement at all, the error does not require remand where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the third-party's statement.

Commissioner's Brief (docket number 9) at 18-19. In *Buckner*, the Eighth Circuit determined that "although the ALJ did not expressly address the girlfriend's statement in his decision, the ALJ's error does not require remand. . . . [M]uch like the third-party statements in *Robinson* and *Lorenzen*, the same evidence that the ALJ referred to in discrediting Buckner's claims also discredits the girlfriend's claims." 646 F.3d at 560. Because the ALJ sufficiently assessed Gladwin's credibility, and the evidence that the ALJ referred to in discrediting Gladwin's claims also discredits her husband's claims, the Court concludes that ALJ's failure to address Gladwin's husband's statements "had no bearing on the outcome of [Gladwin's] case and does not require remand." *Id.*

## VI. CONCLUSION

The Court finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case, and made a proper RFC assessment for Gladwin. Furthermore, the Court determines that remand is unnecessary for a consultative examination because no crucial issues were undeveloped and the medical evidence was

based on medically acceptable clinical and laboratory diagnostic techniques. The Court also finds that the ALJ properly determined Gladwin's credibility with regard to her subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this _____ day of November, 2012.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA